

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| MARIA I. MARTINEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:04-CV-293-C |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Plaintiff Maria I. Martinez seeks judicial review of a decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment.

## I.   Judicial Review

Judicial review of appeals regarding SSI are limited to determining whether the Commissioner's decision is supported by substantial evidence in the record and whether proper legal standards were applied. *Higginbotham v. Barnhart*, 405 F.3d 332, 335 (5th Cir. 2005). When undertaking this review, the court must consider all the evidence, including the evidence favorable to the claimant. *Id.* However, it is the Commissioner, rather than the courts, who must resolve conflicts in the evidence and, therefore, courts may not reweigh the

evidence or try the issues *de novo. Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). If the court determines that the Commissioner's decision is supported by substantial evidence, it is conclusive and must be affirmed. *Id*. at 173.

## II.   Discussion

Martinez claimed she was disabled because of back pain. (Tr. 24-25, 89, 113.) After her applications were denied at the first two stages of the administration's review, an Administrative Law Judge (ALJ) held a hearing and issued a decision in which he found at step four of the sequential disability evaluation process[1] that Martinez was not disabled. (Tr. 18 .)   He determined that despite her impairments she was capable of performing light work and that she could perform her past work as a motel housekeeper, which is performed at the light work exertional level. (Tr. 17.)   Martinez presents two questions in her appeal: (1) whether the ALJ failed to fulfill his duty under Social Security Ruling 82-62 by not fully questioning her and developing the record regarding the physical and mental demands of her past relevant work and (2) whether the ALJ failed to make factual and credibility findings. For the following reasons, the United States Magistrate Judge recommends that the District Court find that the ALJ failed in neither respect and that the Commissioner's decision is supported by substantial evidence.

---

[1]

In evaluating disability, the Commissioner conducts a five-step sequential evaluation process, under which it is determined whether: (1) the claimant is not working in substantial gainful activity; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals a listed impairment in Appendix I of the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing alternative work. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000); 20 C.F.R. §§ 404.1520, 416.920 (2004).

**A.**

The ALJ relied on the Dictionary of Occupational Titles (DOT)[2] to determine that Martinez's past work as a motel housekeeper was performed at the light work exertional level. Contrary to Martinez's contentions, the ALJ was not required to determine the requirements of Martinez's past work by questioning her; he could derive this information from the DOT.

Social Security Ruling 82-62 directs that in cases in which the claimant is found to be capable of performing past work, the ALJ must obtain detailed information regarding the requirements of the claimant's past work from the claimant, the claimant's former employer, or another informed source. S.S.R. 82-62, 1982 WL 31386 (1982). Likewise, the Fifth Circuit Court of Appeals has acknowledged that an ALJ's determination that a claimant can perform his past work may be based on descriptions of the claimant's past work as he actually performed it or on descriptions of how the work is generally performed in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564-65 (5th Cir. 1995); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). Therefore, the ALJ's reliance on the DOT to determine the physical requirements of Martinez's past work was proper and, further, his determination that she could perform the physical requirements of that work, including the requirements

---

[2]

The DOT is published by the United States Department of Labor and provides an extensive listing of jobs existing in the national economy. For each listed job, the DOT indicates the specific tasks and responsibilities of that job in addition to the strength, education, and vocational preparation requirements needed to perform the listed job. The DOT provides the maximum requirements of jobs as they are generally performed. S.S.R. 00-4p, WL 1898704 (2000).

3

of occasional stooping, kneeling, and crouching, is supported by substantial evidence. (Tr. 101-102, 256-57, 268-69; *see also* Tr. 351-52, 357, 361.)

## B.

Martinez's contention that the ALJ erred in making factual and credibility findings can be characterized as a complaint about the manner in which the ALJ summarized the medical evidence and his rejection of Martinez's allegations of disabling pain. However Martinez's contentions are characterized, the ALJ followed the appropriate legal standard in making determinations regarding the medical evidence and the credibility of Martinez's testimony.

Martinez's complaints regarding the ALJ's factual findings relate to his summary of medical evidence from 2004. Most of this evidence relates to examinations and assessments of Martinez's continued complaints of pain following a 360 degree fusion she underwent in 2002. (Tr. 218, 220, 351-52, 358, 361.) The ALJ stated, "Examination reports in 2004 show that the claimant has about a 30 percent deficit in forward bending, but her fusion cites [*sic*] are solid, she is able to walk independently, and she is able to move all extremities normally." (Tr. 17.)

Martinez points out that the ALJ used the adjective "solid" when describing her fusion sites, although the medical evidence characterizes the sites as "stable"; criticizes the ALJ for stating that she was able to walk independently; and claims that there is no record to support the ALJ's finding that she could move all her extremities normally. She also complains that he failed to cite statements from the medical records that were favorable to her, including

4

comments regarding her range of motion and a notation that her fusion was "technically successful" but that she continued to have a back problem and that ongoing treatment at a pain clinic would be appropriate. (Tr. 352.)

J. Max Word, M.D., indicated that a scan of Martinez's lumbar spine showed a 360 degree fusion with a "stable appearance" and Martinez's physician, J. Nathan Wilson, M.D., described the scan as showing a "solid appearing fusion." (Tr. 351-52.) The ALJ's characterization of Martinez's fusion sites as "solid" was, therefore, not incorrect. Likewise, the ALJ was not incorrect in stating that Martinez could walk independently; Dr. Wilson noted that she ambulated with an assistive device. (Tr. 352.) Finally, there is evidence that Martinez could move her extremities normally; examining physician Nagarjun Narra, M.D., indicated that Martinez's extremities were within normal limits. (Tr. 361.)

Finally, the ALJ provided an accurate summary of the medical evidence. He acknowledged that Martinez complained of back pain in April 2000 which began when she lifted a trash can at work. (Tr. 15, 132.) He noted that she was diagnosed with mild rotoscoliosis at that time and was treated with pain medications and epidural steroid injections. (Tr. 15-16, 125-26, 132.) He also acknowledged that she was diagnosed with cervical spine facet arthropathy and a disc bulge in September of 2000; was diagnosed with degenerative disc disease with disc bulges in May 2002; underwent a diskectomy and decompression surgery at the L4-5 and L5-S1 joints (the 360 degree fusion) in September 2002; and continued to complain of pain after her surgery. (Tr. 16-17.)

The ALJ also cited evidence that was unfavorable to Martinez. He noted that the

5

physician who diagnosed her rotoscoliosis indicated that the condition was mild and that her subjective complaints were out of proportion to the objective findings. (Tr. 16, 132.) He noted that examining physician Ralph G. Menard, M.D., indicated that Martinez exhibited symptom magnification without much physical impairment. (Tr. 16, 125-26.) In fact, Dr. Menard stated that Martinez exhibited severe to extreme symptom magnification and one of the most "self-limiting behaviors" he had ever seen. (Tr. 126.) The ALJ also noted that during this time Martinez exhibited no sensory or neurological deficits and that she was able to walk independently, move her extremities normally, flex her back to within 10 degrees of the normal range of motion, and move her neck in a full range of motion. (Tr. 15-16.)

Significantly, the ALJ also noted that there were no treatment or examination reports to consider from the period between January 2001 and April 2002 and stated that the absence of medical records for a 15 month period deterred from Martinez's allegations of disability. (Tr. 16.)

Finally, as noted above, the ALJ acknowledged the medical evidence after Martinez's 360 degree fusion, which indicated that the surgery was successful. (Tr. 16-17, 352.) Although not cited by the ALJ, the evidence also shows that Martinez's legs were not atrophied, that she had normal reflexes, no sensory deficits, and no extremity weakness. (Tr. 352, 361.) In addition, nerve conduction studies showed no evidence of entrapment neuropathy or radiculopathy in the lower extremities and x-rays showed not only a solid fusion but only minimal to no degenerative changes and no evidence of instability. (*Id.*) Based on a review of the record in its entirety, it cannot be said that the ALJ made incorrect

findings of fact or incorrectly characterized the medical evidence. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (Courts often look beyond the ALJ's decision, evaluating the record as a whole to determine whether there is evidence, though not cited by the ALJ, that supports his credibility determination).

Likewise, the ALJ did not err in determining the credibility of Martinez's subjective complaints of pain. Although the court must consider all the evidence, including that favorable to the claimant, *Higginbotham*, 405 F.3d at 335, it is the Commissioner, rather than the courts, that must resolve conflicts in the evidence. *Martinez*, 64 F.3d at 174. The responsibility for determining whether pain is disabling lies with the ALJ and his decision in this regard is entitled to considerable judicial deference. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

The ALJ's responsibility requires him to consider the claimant's medical history; the medical records; statements from the claimant, the claimant's physicians, and other persons, 20 C.F.R. § 404.929(c)(1); the objective medical evidence such as evidence of reduced joint motion, muscle spasm, sensory deficit, or motor disruption, 20 C.F.R. § 404.929(c)(2); and the claimant's statements in regard to the intensity, persistence, and limiting effects of pain in relation to the objective medical and other evidence in reaching a conclusion as to whether the claimant is disabled, 20 C.F.R. § 404.929 (c)(4). Further, as Martinez points out, the ALJ must consider specific factors such as the claimant's daily activities, factors that aggravate the claimant's pain, the intensity and duration of the claimant's pain, and the treatment and

7

medications the claimant utilizes to treat the pain. 20 C.F.R. § 416.929(c)(3); S.S.R. 96-7P, 1996 WL 374186 (1996).

The ALJ acknowledged his duty under the Commissioner's rulings and regulations (Tr. 15), and fulfilled his obligation (Tr. 15-17). The law requires an ALJ to explain his reasons for rejecting a claimant's allegations of disabling pain. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). In this case, the ALJ rejected the claimant's allegations that her pain was disabling based on the evidence from her physicians and his determination in this regard is supported by substantial evidence. (Tr. 16-17; *see* 352, 361.)

## III.   **Recommendation**

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Martinez's case with prejudice.

## IV.   **Right to Object**

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within 10 days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual

findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: _____July 30_____, 2005.




NANCY M. KOENIG
United States Magistrate Judge